# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MILTON VERAN WILLIAMS,       ) | |
|                    ) | |
|         **Plaintiff ,**       ) | |
|                    ) | |
|        **vs.**            ) | **Case No. CIV-05-777-D** |
|                    ) | |
| **DISTRICT NINE TASK FORCE,**   ) | |
| **et al.,**                         ) | |
|                    ) | |
|        **Defendants.**     ) | |

## REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing pro se, initiated this action pursuant to 42 U.S.C. § 1983 and the Oklahoma Governmental Tort Claims Act, Okla. Stat. tit. 51, §§ 151-200.  The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).  Before the Court is Defendant Brooke Buchanan's motion for summary judgment and brief in support ("Defendant's MSJ") [Doc. No. 145] and Plaintiff's motion for summary judgment ("Plaintiff's MSJ") [Doc. No. 126], his brief in support of summary judgment ("MSJ Brief") [Doc. No. 129] and a supplemental brief in support ("Supplemental MSJ Brief") [Doc. No. 146].[1] Responses and, in some cases, replies have been filed, and all the motions are now at issue and ready for determination.  For the reasons discussed below, it is recommended that Defendant Buchanan's motion for summary judgment be denied in part and granted

---

[1]As explained by order dated January 17, 2007 [Doc. No. 149], although Plaintiff's motion [Doc. No. 126] is styled "Supplement to Previously File[d] Motion for Summary Judgment," the motion has been construed as seeking summary judgment pursuant to Fed. R. Civ. 56(c) with respect to the merits of his remaining Fourth Amendment claim, and Plaintiff's "memorandum" [Doc. No. 129] has been construed as a supporting brief.  Additionally, Plaintiff has filed a "Motion for Order Issuing Judgment in Favor of Plaintiff" [Doc. 146] which has been liberally construed as a supplemental brief supporting his motion for summary judgment (hereinafter "Supplemental MSJ Brief").

in part.  It is further recommended that Plaintiff's motion for summary judgment be
denied.

<u>Background</u>

Plaintiff alleges in his complaint that at approximately 7:30 p.m. on January 12,
2001, Defendant Buchanan and Officers Bruning and Higgins illegally entered and
searched his home.  According to Plaintiff, the officers parked a van near the front yard
of his residence at 923 E. Vilas in Guthrie, Oklahoma, and Defendant Buchanan, acting
as an undercover officer, attempted to conduct a drug transaction with Plaintiff on his
front porch.[2]  Plaintiff alleges that he then reentered his home, and Defendant Buchanan
returned to the van.  The three officers then exited the van, approached the front door of
Plaintiff's residence and without a warrant, forcibly entered the home.  Plaintiff contends
that Defendant and the other officers conducted an illegal search of his home during
which they destroyed and seized property in violation of his Fourth Amendment rights.
The officers later obtained a search warrant by telephone.

Plaintiff was subsequently convicted in the District Court of Logan County, Case
No. CF-2001-11, of three drug-related offenses arising from the January 12, 2001, events.[3]
Petitioner appealed his convictions, and on July 11, 2003, the Oklahoma Court of
Criminal Appeals ("OCCA") reversed with instructions to dismiss the convictions for

---

[2]Plaintiff asserts that Defendant attempted to "entrap Plaintiff into conducting a drug transaction"
which Plaintiff refused to do.  Complaint at 2.

[3]The jury returned a guilty verdict on the charges of distribution of a controlled dangerous
substance (crack cocaine) (Count One); possession of a controlled dangerous substance (crack cocaine)
(Count Three); and maintaining a place for keeping/selling controlled dangerous substance (Count Four).

2

possession of a controlled dangerous substance (crack cocaine) (Count Three) and maintaining a place for keeping/selling controlled dangerous substance (Count Four) based on the Court's determination that "the police unlawfully entered [Plaintiff's] home, requiring the suppression of all evidence seized as a result of the entry."[4]  OCCA Summary Opinion at 3 (citing *Payton v. New York*, 445 U.S. 573 (1980)), attached as Ex. 5 to Defendant's MSJ.

Plaintiff then brought this § 1983 action raising three claims based on the allegedly unconstitutional search of his home and the forfeiture of funds seized without due process.  As relief, Plaintiff requested money damages, including nominal and punitive damages.  Complaint at 5.  Plaintiff initially named six individuals and the District Nine Task Force as defendants.[5]  All Defendants except Buchanan have been dismissed and the only remaining claim against Defendant Buchanan is Plaintiff's claim in Count One that his rights under the Fourth Amendment were violated by the forced entry into his

---

[4]The OCCA affirmed Plaintiff's conviction for distribution of a controlled dangerous substance (Count One), but ordered the district court to modify the fine imposed from $100,000.00 to $10,000.00 and to amend the judgment and sentence to reflect that the 30-year sentence for that offense be served concurrently with Plaintiff's ten-year sentence in Case No. CF-2000-117, District Court of Logan County. Defendant's MSJ, Ex. 5 at 3.

[5]The named individual defendants were District Nine Task Force members Mark Bruning, Brooke Buchanan and Dale Higgins; Guthrie police officer Rex Brown; trial witness Kristey Lawson; and Logan County District Attorney Robert Hudson.  Complaint, pp. 1, 2, 2(b).

home and the subsequent search without a warrant or exigent circumstances.[6] Complaint at 3.

Both parties have moved for summary judgment. Defendant seeks summary judgment on the following theories: (1) Plaintiff's claim is time-barred; (2) Plaintiff cannot maintain a claim against Defendant in his official capacity; (3) Defendant is entitled to qualified immunity because Plaintiff fails to establish Defendant's personal participation in the alleged violation, because Plaintiff fails to establish a constitutional violation and/or the objective unreasonableness of Defendant's actions, and because the damage to Plaintiff's property – if any – was minimal.

Plaintiff moves for summary judgment on Count One, essentially arguing that this Court should give preclusive effect to the OCCA's conclusion on direct appeal that Plaintiff's Fourth Amendment rights were violated by the officers' entry into his home because that decision was not "contrary to" relevant Supreme Court precedent, specifically *Payton v. New York*, 445 U.S. 573 (1980).

For the reasons discussed below, it is recommended that Defendant's motion for summary judgment be granted in part and denied in part. Specifically, the undersigned

---

[6]By order dated March 22, 2006, based on the recommendations entered by the undersigned, Chief Judge Cauthron granted the motion to quash service of process on the Oklahoma Attorney General, who was not a named Defendant in the complaint; found Defendant District Nine Task Force's motion to dismiss moot based on Plaintiff's voluntarily dismissal without prejudice; and dismissed Plaintiff's claim against Defendant Lawson pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for relief. [Doc. No. 89]. Thereafter, by order entered September 29, 2006, Judge Cauthron dismissed all of Plaintiff's claims with the exception of his claim in Count One that the warrantless entry into his residence on January 12, 2001, by Defendants Buchanan, Bruning, Higgins and Brown violated the Fourth Amendment. Subsequently, a stipulation of dismissal was filed, dismissing with prejudice all claims against Defendants Bruning and Brown; likewise, a stipulation of dismissal was filed, dismissing with prejudice all claims against Defendant Higgins. [Doc. Nos. 118 and 124].

recommends that Defendant's motion for summary judgment with respect to the claim against him in his official capacity be granted.  However, the undersigned finds that Plaintiff's claim is not time-barred and that material disputed facts preclude summary judgment on the qualified immunity issue.  Further, the undersigned finds that a genuine issue of material fact exists with respect to the merits of Plaintiff's claim, and it is therefore recommended that Plaintiff's motion for summary judgment be denied.

## DISCUSSION

I. <u>Standard of Review</u>

"Summary judgment is proper if the evidence submitted by the parties, viewed in the light most favorable to the non-movant, indicates that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998) (citing Fed. R. Civ. P. 56(c)).  "A fact is material if under the relevant substantive law it is essential to proper disposition of the claim." *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only material factual disputes can create a genuine issue for trial and preclude summary judgment. *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991) (citation omitted).  The Supreme Court has explained that "the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  *See also Chasteen v. UNISIA JECS Corp.*, 216 F.3d 1212, 1216

(10th Cir. 2000) ("A 'material fact' is one which could have an impact on the outcome of the lawsuit, while a 'genuine issue' of such a material fact exists if a rational jury could find in favor of the non-moving party based on the evidence presented.").

The court views the evidence and draws reasonable inferences in the light most favorable to the nonmovant. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998). "The summary judgment material relied upon by the nonmovant is viewed in the light most favorable to him, but that material must contain significantly probative evidence that would allow a trier of fact to find in his favor." *Belcher v. Boeing Commercial Airplane Group*, No. 03-3319, 2004 WL 1472812, at *2 (10th Cir. July 1, 2004) (unpublished decision ) (citing *Anderson*, 477 U.S. at 249-50). "[F]ailure of proof of an essential element renders all other facts immaterial," *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1212 (10th Cir. 2000), and "[f]actual disputes about immaterial matters are irrelevant to a summary judgment determination." *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1361 (10th Cir. 1993) (citing *Anderson*, 477 U.S. at 248).

Because Plaintiff is proceeding pro se, the Court must construe his pleadings and other filings liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the pro se litigant's advocate. *Hall*, 935 F.2d at 1110.

II. Defendant's Motion for Summary Judgment

    A. Statute of Limitations

    Defendant recognizes that the issue of whether Plaintiff's Fourth Amendment claim is time-barred by the relevant two-year statute of limitations[7] was addressed and denied by this Court in the context of Defendant's prior motion to dismiss.[8] Defendant's MSJ at 5 (citing Report and Recommendation dated September 1, 2006, at 12-13). However, Defendant seeks this Court's review of the statute of limitations issue by raising a somewhat different argument in his motion for summary judgment.[9] Specifically, citing *Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 559 n. 4 (10th Cir. 1999), Defendant contends that Plaintiff's claim in Count One is not one of the "rare situations in which tolling principles apply" because "not <u>all</u> of the evidence supporting Plaintiff's

---

    [7]In Oklahoma, the limitations period for § 1983 actions is two years. *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005); *Meade v. Grubbs*, 841 F.2d 1512, 1522 (10th Cir. 1988).

    [8]In his motion to dismiss [Doc. No. 49], Defendant Buchanan adopted the motion and brief filed by Defendant Higgins [Doc. No. 35] in which Higgins alleged, in part, that Plaintiff's Fourth Amendment claim, filed on July 7, 2005, was time-barred because, although Plaintiff's convictions in Counts Three and Four in Case No. CF-2001-11 had been reversed, the conviction in Count One had not been invalidated; thus, Plaintiff had suffered no damages and the principles in *Heck v. Humphrey*, 512 U.S. 477 (1994) were inapplicable. Motion to Dismiss [Doc. No. 35 at consecutive page 4]. The undersigned found that Plaintiff's Fourth Amendment claim filed on July 7, 2005, was not time-barred because the claim did not become ripe until July 11, 2003, when the OCCA reversed the two convictions based on its finding that the evidence supporting the convictions was obtained by an unconstitutional search. Report and Recommendation at 13 [Doc. No. 112]. No objection was filed, and Chief Judge Cauthron adopted the Report and Recommendation and denied Defendants' motions to dismiss. [Doc. No. 116].

    [9]In his reply Plaintiff argues that Defendant's argument is precluded by the doctrine of collateral estoppel and res judicata because this issue was previously determined in both state court and federal court. Plaintiff's Response to Defendant's MSJ [Doc. No. 148] at 2. Plaintiff's argument fails. As more fully discussed *infra* with respect to Plaintiff's motion for summary judgment, the OCCA's conclusion that officers entered Plaintiff's home in violation of the Fourth Amendment is not afforded collateral estoppel effect in the instant case because there is no privity between the prosecution in the criminal case and Defendant. In addition, no determination has previously been made in the instant case as to the merits of Plaintiff's Fourth Amendment claim.

convictions [of possession of a controlled dangerous substance and maintaining a place to keep/sell a controlled dangerous substance] was seized during the search. Defendant's MSJ at 5-6. As "examples" of such untainted evidence, Defendant refers to the trial testimony of Kristey Lawson[10], asserting that such testimony - "admitting she was at the house several times that day" and "that several other people were there" - "clearly suggests that Plaintiff maintained a place where illegal drug activity occurred." *Id.* at 5. Defendant also cites to evidence of a "drop hole" in the house and "accumulated debris under the house." *Id.* at 5-6. Defendant further contends that evidence presented at trial concerning his purchase of cocaine from Plaintiff on January 12, 2001, "could" support a count of possession of a controlled dangerous substance. *Id.* at 6.

There has been considerable confusion and debate about whether and when certain Fourth Amendment claims might run afoul of the *Heck* rule, requiring deferral of a § 1983 action until there has been a favorable termination of the criminal proceeding. Courts have generally employed a fact-based approach, rather than automatically exempting all Fourth Amendment claims from the deferred accrual rule of *Heck*. In this case, the undersigned finds that a ruling favorable to Plaintiff on his claim that he suffered injury as a result of Defendant's unconstitutional search of his home and seizure of his property would be inconsistent with his convictions which were based on evidence obtained during such search. *See Muhammad v. Close*, 540 U. S. 749, 751 (2004)

---

[10]Although Plaintiff spells this Defendant's name "Kristey" Lawson, and the answer filed by this Defendant reflects the name of "Kristey" Lawson [Doc. No. 83], the trial transcript excerpts attached to Defendant's summary judgment motion reflect "Christy" Lawson. Defendant's MSJ, Ex. 4 at 2 (Index of trial transcript, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1). Throughout this Report and Recommendation this Defendant has been referred to as Kristey Lawson.

("[W]here success in a prisoner's § 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.") (citing *Heck v. Humphrey, supra*).  Thus, as the undersigned found in the previous Report and Recommendation, because the successful resolution of  Plaintiff's § 1983 claim would necessarily cast doubt on the validity of his convictions or sentences related to Counts Three and Four, the accrual of the cause of action was delayed until these convictions or sentences were invalidated.  Because the cause of action did not accrue until such time, the applicable statute of limitations did not begin to run until the same time.  *See Beck v. City of Muskogee Police Dept.*, 195 F.3d 553, 557-59 (10th Cir. 1999) (citing *Heck v Humphrey*, 512 U.S. 477, 489-90 (1994)).

Plaintiff's claim that he suffered injury when Defendant unlawfully entered his home and obtained evidence used to convict him of possession of controlled dangerous substance and maintaining a place for keeping/selling controlled dangerous substance, in violation of the Fourth Amendment, necessarily implies the invalidity of his convictions in Counts Three and Four, Case No. CF-2001-11, which were reversed by the OCCA on July 11, 2003, with instructions to dismiss.  The undersigned is not persuaded by Defendant's assertion that Kristey Lawson's testimony or the presence of a drop hole and debris under the house provides sufficient evidence of illegal drug activity to mitigate against the application of a delayed accrual of Plaintiff's 1983 action.  Lawson's cited testimony was vague and arguably consistent with legal activity and the drop hole

9

appears to have been discovered initially during the warrantless search.  Defendant's MSJ, Ex. 3 at ¶ 12 (Affidavit of Brooke Buchanan); *Id.*, Ex. 4 at p. 184-85 (portion of testimony of Kenneth Higgins, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol.1).

Defendant also asserts that the officers clearly had probable cause to and did in fact obtain a search warrant, the validity of which was not addressed by the OCCA nor challenged by Plaintiff.[11]  To the extent Defendant intended such assertions as support for an argument based on harmless error or inevitable discovery, he has made no such argument.  Moreover, it is undisputed that the warrant ultimately issued relied in substantial part on the evidence discovered during the initial warrantless search.  Defendant's MSJ, Ex. 9 at 3 ("Transcript of Telephonic Search Warrant Had on January 12, 2001").  In any event, it is the opinion of the undersigned, that this is exactly the situation that the Court in *Heck* was trying to prevent, and had Plaintiff attempted to bring this § 1983 action challenging the constitutionality of the warrantless search executed by Defendant prior to the dismissal of his convictions, that action would have been dismissed  based on a determination that a judgment in his favor would necessarily imply the invalidity of his convictions or sentences.  Therefore, the undersigned once again finds that Plaintiff's claim in Count One did not accrue until July 11, 2003, when Plaintiff succeeded in having his convictions in Counts Three and Four set aside by the

---

[11]The undersigned notes that the OCCA found that all evidence seized subsequent to the illegal entry and search must be suppressed, which would include any evidence seized pursuant to the warrant. Defendant's MSJ, Ex. 5 at 3 n.2.

OCCA on direct appeal. Because Plaintiff filed the complaint within two years of the accrual date, the Fourth Amendment claim in Count One is not time barred. Consequently, the undersigned finds that Defendant has failed to demonstrate that he is entitled to summary judgment on this basis.[12]

## B. Claim Against Defendant in his Official Capacity

Defendant also moves for summary judgment on grounds that he cannot be held liable in his official capacity. Defendant's MSJ at 7. In support, Defendant argues that he has no "final policy making authority" either as a member of the District Nine Drug Task Force or as an officer for the Payne County Sheriff's Department, and therefore Plaintiff cannot establish "a direct causal link between his alleged constitutional injury and a 'policy' or 'custom' of the entity." *Id.* (citing *Monell v. New York City Dept. of Soc. Servs.*, 463 U.S. 658, 690 n.55 (1978), and *Hinton v. City of Elwood*, 997 F.2d 774, 782 (10th Cir. 1993)). In response, Plaintiff argues that Defendant was the supervisor for the

---

[12]Defendant also argues that "Plaintiff's Fourth Amendment claims arise from Defendants' 'gross negligence' in conducting the search and securing the property thereafter." Defendant's MSJ at 6. Defendant then argues that because Plaintiff's claims allege injury based on damage to his property rather than as a result of his incarceration, the delayed accrual of a claim provided for in *Heck* does not apply. However, the Court in *Heck* specifically applied its delayed accrual provision to those instances where a plaintiff not only attempts to "recover damages for allegedly unconstitutional conviction or imprisonment," but also **for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid[.]"** (emphasis added). In the instant case that "other harm" includes the alleged damage to Plaintiff's property caused when Defendant executed an allegedly unconstitutional search and seizure at his home. As Plaintiff notes, the prior Report and Recommendation recommended that Defendant's motion to dismiss Count Two - Plaintiff's claim of malicious and retaliatory destruction of personal property - be granted because such claim accrued on the date of the alleged destruction, January 12, 2001. That recommendation was based on the undersigned's finding that Plaintiff's claim in Count Two was "not subject to the tolling principles of *Heck, supra,* because this claim is not based on allegations that would call into question the validity of Plaintiff's convictions and sentences." Thus, the limitations period for such claim expired on January 12, 2003, two years before this action was filed. Report and Recommendation at 14-17, adopted by Order dated September 29, 2006 [Doc. No. 116]. The dismissal of Plaintiff's claim for malice and gross negligence in Count Two does not preclude his claim in Count One for property damage alleged to have resulted from a search in violation of the Fourth Amendment.

District Nine Task Force and that he was the "lead man" in conducting the undercover drug transaction and thus was delegated final policy-making authority.   Plaintiff's Response to Defendant's Motion for Summary Judgment [Doc. No. 148] at 20.

The undersigned finds that Defendant is entitled to summary judgment with respect to the official capacity claim against him in Count One, but for slightly different reasons than argued by Defendant and countered by Plaintiff.[13]  The record demonstrates that on January 12, 2001, Defendant was acting as a District Nine Task Force ("Task Force") officer.  Defendant was driving a van assigned to him by the Task Force, and he was conducting law enforcement activities in Logan County with other members of the Task Force.  Following the drug transaction with Plaintiff, Defendant determined that Plaintiff should be arrested in a "safe manner" *i.e.*, by having the three officers enter the residence immediately.  Defendant's MSJ at 9; *id.* Ex. 4 at p. 62, p. 67, p. 109, pp. 131-32 (portion of testimony of Brooke Buchanan, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1).  To the extent Plaintiff asserts that Defendant was acting in his official capacity as a Task Force supervisor, an official capacity suit against Defendant in this position is treated as a claim against the Task Force.  *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  The Task Force previously filed a motion to dismiss, asserting that the Task Force is a special program of the District

---

[13]The Tenth Circuit recognizes that "a *sua sponte* order of summary judgment may be appropriate if the losing party was on notice that [they] had to come forward with all of [their] evidence. *Jones v. Salt Lake County*, 503 F.3d 1147, 1152 ( 10th Cir. 2007) (quoting *Ward v. Utah*, 398 F.3d 1239, 1245-46 (10th Cir. 2005).  Here, Plaintiff was put on notice by Defendant's motion for summary judgment that he had to come forward with all of his evidence regarding Defendant's liability in his official capacity.

Attorney's Office of the Ninth Judicial District and that to the extent the Task Force is an entity which can be sued, it is a branch or agency of the State of Oklahoma and therefore protected by Eleventh Amendment immunity.  Doc. No. 34 at 2 and n.1 (citing *Kentucky v. Graham*, 473 U.S. 159, 167 (1985) and www.paynecounty.org/district_attorney.php). Plaintiff did not respond to the immunity defense raised in the motion to dismiss; rather, in his response to the motion to dismiss, he indicated that he desired to voluntarily dismiss his claims against the District Nine Task Force.  *See* Note 6, *supra*.  As a result, an order was entered concluding that Plaintiff's filing operated as a voluntary dismissal, and Plaintiff did not appeal that order.  *See* Doc. No. 89.  On this record, the undersigned finds that Defendant is entitled to summary judgment with respect to Plaintiff's official capacity claim against him in his capacity as a Task Force officer.

To the extent Plaintiff also alleges a claim against Defendant in his official capacity as an officer for Payne County Sheriff's Department, such claim amounts to a claim against Payne County itself, even though Plaintiff has not named the entity as a defendant.  *Kentucky v. Graham*, 473 U.S. at 166; *see also Lopez v. LeMaster*, 172 F.3d 756, 762 (10th Cir. 1999) ("Appellant's suit against Sheriff LeMaster in his official capacity as sheriff is the equivalent of a suit against Jackson County.").  A county cannot incur liability based solely on its employment of someone who has committed a constitutional violation.  *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1318 (10th Cir. 2002).  Instead, county liability arises only if the alleged wrongdoing has resulted from a county policy or custom.  *Id.  See also Myers v. Okla. County Bd. of County Comm'rs*, 151 F.3d 1313,

13

1318 (10th Cir. 1998). Here, Plaintiff makes no claim that Defendant's warrantless entry into his home resulted from a policy of Payne County. Nor does Plaintiff allege that any official county policy was the "moving force" behind the claimed unconstitutional conduct. *See Board of County Commissioners of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 404 (1997). Thus, Plaintiff has failed to allege any facts that could support a claim against Defendant in his official capacity as an officer for the Payne County Sheriff's Department.

For these reasons, the undersigned finds that there are no genuine issues of material fact with respect to Plaintiff's official capacity claim against Defendant in Count One. Accordingly, Defendant is entitled to summary judgment in his official capacity. This leaves Plaintiff's Fourth Amendment claim against Defendant in his individual capacity which is addressed below.

C. Personal Participation

Plaintiff alleges in Count One that Defendant violated his clearly established Fourth Amendment rights by forcibly entering his residence without a search warrant or exigent circumstances. Complaint at 3, 3(b). Defendant seeks summary judgment based on Plaintiff's failure to allege and sufficiently show Defendant's personal participation in the illegal entry. Defendant's MSJ at 11-12.[14] Personal participation is necessary for individual liability under § 1983. *See Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir.

---

[14]Defendant has imbedded his lack of personal participation argument within his qualified immunity defense; however, if he prevails on his lack of person participation argument, the Court need not address the defense of qualified immunity. Accordingly, Defendant's lack of personal participation defense is addressed first.

2006).  But a supervisor can be held liable if the inmate identifies an "affirmative link" between the constitutional deprivation and the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.  *See Holland v. Harrington*, 268 F. 3d 1179, 1187 (10th Cir. 2001); *see also Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997).

Defendant claims that he was not the "lead" officer on January 12, 2001, but had been called to Logan County along with other drug task force members to "assist" Officer Bruning with an arrest warrant concerning another individual in an unrelated case. Defendant's MSJ at 11 (referring to "Uncontroverted Facts #5," based on Ex. 6 at p. 15 (portion of testimony of Mark Bruning, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1)) .  Therefore, Defendant contends that he "cannot be said to have 'personally conducted' the events underlying this lawsuit." *Id.*  He further alleges that he was neither the arresting officer in Plaintiff's case nor employed by the arresting authority, the Guthrie Police Department.  *Id.* (citing "Uncontroverted Facts# 2, 4, 5").

However, as discussed *supra* with regard to Plaintiff's official capacity claim, the record shows that Defendant sufficiently participated as a Task Force officer in the events leading to the warrantless residential entry to be held individually liable for the alleged constitutional violation.  Defendant acknowledges that on January 12, 2001, he was driving a vehicle assigned to him by the Task Force, Defendant's MSJ, Ex. 7 (Defendant's Responses to Plaintiff's First Set of Interrogatories) at p. 4 (Response to Interrogatory 7) and Ex. 9 (Transcript of Telephonic Search Warrant Had on January 12, 2001), and that

as an undercover Task Force member, he negotiated and completed the drug transaction with Plaintiff on the porch of Plaintiff's residence.  Defendant's MSJ, Ex. 3 at ¶¶3,4 (Affidavit of Brooke Buchanan).  The record further shows that Defendant returned to the van and stated that Plaintiff sold him what he believed to be cocaine.  Defendant's MSJ, Ex. 1 (District Nine Drug Task Force Probable Cause Affidavit executed by Mark Bruning).  Defendant acknowledges that it was his determination that the "safest manner" to effect an arrest of Plaintiff for the illegal drug transaction involved the officers' immediate, warrantless entry into Plaintiff's home.  *See supra*, p. 12.

The undersigned finds that the evidence is sufficient for a fact-finder to conclude that Defendant personally participated in the alleged constitutional violation.

### D.  Qualified Immunity

Defendant contends that even if his personal participation is established, he is entitled to summary judgment on grounds of qualified immunity because Plaintiff has not alleged a constitutional violation, and even if Plaintiff demonstrates that his constitutional rights were violated, Defendant's conduct was objectively reasonable. Defendant's MSJ at 7-14.[15]

---

[15]Defendant argues in part that he is entitled to qualified immunity because Plaintiff fails to prove that any damage to his property was "excessive or unreasonable."  Defendant's MSJ at 14.  Defendant offers no authority for his contention that damage must be excessive or unreasonable in order to support a claim. Certainly, if a constitutional violation is demonstrated, nominal, compensatory and /or punitive damages are available.  *See Searles v. Van Bebber*, 251 F.3d 869, 879 (10th Cir. 2001) ("[T]he rule seems to be that an award of nominal damages is mandatory upon a finding of a constitutional violation[.]") (citing *Carey v. Piphus*, 435 U.S. 247, 267 (1978); *Farrar v. Hobby*, 506 U.S. 103, 112 (1992)); *Heck*, 512 U.S. at 487 n. 7 ("In order to recover compensatory damages . . . the § 1983 plaintiff must prove not only that the search was unlawful, but that it caused him actual, compensable injury, which, we hold today, does not encompass the 'injury' of being convicted and imprisoned (until his conviction has been overturned."); *Smith v. Wade*, 461 U.S. 30, 56 (1983) (holding punitive damages are available for conduct which is "shown to be motivated (continued...)

The defense of qualified immunity shields government officials performing discretionary functions from liability for civil damages arising from claims brought against them in their individual capacities. *McFall v. Bednar*, 407 F.3d 1081, 1087 (10th Cir. 2005). When a defendant seeks summary judgment based on qualified immunity, the Court conducts a two-part inquiry. First, the plaintiff must establish the defendant violated a constitutional right. *Cortez v. McCauley*, 478 F.3d 1108, 1114 (10th Cir. 2007). If a constitutional violation has been shown, the next inquiry is whether the constitutional right was clearly established. *Id.* (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).

### 1. Violation of a Constitutional Right

In considering Defendant's motion for summary judgment, this Court must view the facts in the light most favorable to the nonmoving party. Plaintiff states under oath and has consistently alleged that he had reentered his home after his encounter with Defendant on the front porch and that Defendant thereafter forcibly entered his home without a warrant or consent and conducted an illegal search in violation of the Fourth Amendment.

The Fourth Amendment protects "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. It has long been a "basic principle of Fourth Amendment law that

---

[15](...continued)
by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others").

searches and seizures inside a home without a warrant are presumptively unreasonable."
*Payton v. New York*, 445 U.S. 573, 586 (1980)[16] (some internal quotation marks omitted).
This presumption results from the understanding that "physical entry of the home is the
chief evil against which the wording of the Fourth Amendment is directed." *Id.* at 585.
"In terms that apply equally to seizures of property and to seizures of persons, the Fourth
Amendment has drawn a firm line at the entrance to the house. Absent exigent
circumstances, that threshold may not reasonably be crossed without a warrant." *Id.* at
589-90. *See also Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (holding that "as *Payton*
makes plain, police officers need either a warrant or probable cause plus exigent
circumstances in order to make a lawful entry into a home."); *Wilson v. Layne*, 526 U.S.
603, 610-11 (1999) ("[T]he 'overriding respect for the sanctity of the home that has been
embedded in our traditions since the origins of the Republic' meant that absent a warrant
or exigent circumstances, police could not enter a home to make an arrest.") (citations
omitted).

The initial facts relevant to Plaintiff's claim in Count One are not in dispute.  At
approximately 7:30 p.m. on January 12, 2001, Defendant Buchanan parked a van assigned
to him by the Task Force near the front yard of Plaintiff's residence at 923 E. Vilas in
Guthrie, Oklahoma.  Thereafter, Defendant Buchanan and Plaintiff conducted a drug

---

[16]In *Payton*, police officers entered a suspect's home without a warrant in order to arrest him.
*Payton*, 445 U.S. at 576-77. The Supreme Court invalidated the arrest and held that the Fourth Amendment
prohibits police officers from making warrantless and nonconsensual entries into suspects' homes to make
routine felony arrests.  *Id.* at 602-03.

transaction on Plaintiff's front porch.[17]   Defendant returned to the van in which other law enforcement officers were waiting.

At this point the factual accounts of the parties differ.  Plaintiff's account of the events surrounding the entry of his home on the night in question is set out in his sworn complaint, which is equivalent to an affidavit for purposes of summary judgment.  *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).  Plaintiff alleges that as Defendant left the front porch, Plaintiff reentered his home.  Complaint at 2.  Plaintiff states that Defendant returned to the van and that Defendant and Officers Bruning and Higgins immediately exited the van, kicked in the closed door of Plaintiff's residence and ran into the house.  Complaint at 2(b).  Plaintiff alleges that after the illegal entry, the officers searched his residence without a warrant, all in violation of the Fourth Amendment.[18]

It is undisputed that Defendant failed to obtain a warrant before entering Plaintiff's residence and he does not argue that Plaintiff consented to the officers' entry.  Therefore, unless an exception to the warrant requirement applies, the entry into Plaintiff's home was presumptively unreasonable under the Fourth Amendment.  *Payton*, 445 U.S. at 586.

---

[17]Plaintiff asserts in various pleadings that the facts are controverted as to whether he was "forced" to sell Defendant Buchanan crack cocaine.  However, any § 1983 claim for damages regarding Plaintiff's conviction for distribution of a controlled dangerous substance in Case No. CF-2001-11 is not properly before the Court.  Such claim is premature and barred by *Heck v. Humphrey*, 512 U.S. 477 (1994), because this conviction was affirmed by the state appellate court on direct appeal and has not been otherwise "expunged by executive order, declared invalid by a state tribunal . . . or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 486-87.

[18]The trial testimony of Kristey Lawson, who was present in Plaintiff's home on January 12, 2001, is not inconsistent with Plaintiff's version of the officers' entry.  Lawson testified that Plaintiff came inside the house, stated that he wanted "$100 worth, and he "went outside and then he came back in.  And put his foot up against the door and said 'Police, police,' . . . ."  Defendant's MSJ, Ex. 4 at pp. 149-150 (portion of testimony of Kristey Lawson, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1).  Lawson testified that she did not see Plaintiff look out the window or crack the door to look outside, that the officers kicked in the door and Plaintiff "took off."  *Id.* at 151.

Defendant essentially contends that the warrantless intrusion into Plaintiff's home did not violate Plaintiff's constitutional rights because the entry was justified by exigent circumstances, specifically, a concern for officer safety, "hot pursuit" of Plaintiff, and the potential destruction of evidence.  In support, Defendant argues that (1) Plaintiff had just committed a felony in Defendant's presence (an illegal drug transaction), and therefore Defendant returned to the officers' van and decided to arrest Plaintiff in a "safe[] manner," *i.e.*, immediately, with the assistance of the other Task Force members, rather than first obtaining a search warrant.  Defendant's MSJ at 9.  Defendant further asserts as an uncontroverted fact that "[a]s officers approached the house, Plaintiff yelled 'Police!' and retreated into the house," and therefore, "[b]ecause Plaintiff tried to evade arrest, the officers were entitled to rely upon the 'hot pursuit' doctrine to enter the house and effect the arrest."  *Id.* at 9-10; *see also* Defendant's MSJ, Ex. 3 (Affidavit of Defendant);[19] and Ex. 7 (Defendant's Responses to Plaintiff's First Set of Interrogatories) at p. 7 (Response to Interrogatory No. 14).  Finally, Defendant argues that the warrantless entry was justified because the crime involved drugs, which are subject to destruction.  Defendant's MSJ at 10.  Defendant states that once the officers were inside and

---

[19]In his affidavit, Defendant avers the following:

In my capacity as an undercover drug task force member, I engaged in a drug transaction with [Plaintiff] on the porch of his residence at 923 E. Vilas in Guthrie, Oklahoma.  Upon completing the drug transaction, I returned to the drug task force van to secure the crack cocaine I had obtained from [Plaintiff] and then, along with the other task force members, approached the house to effect the arrest of [Plaintiff].  Officers had to force entry into the house after hearing [Plaintiff] yell "Police!" and seeing him run back into the house.

Defendant's MSJ, Ex. 3 (paragraph designations omitted).

determined that Plaintiff had escaped through the bathroom window, they merely "secured the persons present in the house for their own safety" and "did not search the premises until they obtained a warrant . . . ." *Id.* at 11.

The Supreme Court has held that exigent circumstances may justify warrantless search when: (1) there is probable cause for the search or seizure, and the evidence is in imminent danger of destruction, *Cupp v. Murphy*, 412 U.S. 291, 294-96 (1973); (2) the safety of law enforcement or the general public is threatened, *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967); (3) the police are in "hot pursuit" of a suspect, *United States v. Santana*, 427 U.S. 38, 42-43 (1976); or (4) the suspect is likely to flee before the officer can obtain a warrant, *Minnesota v. Olson*, 495 U.S. 91, 100 (1990).  The Tenth Circuit has recognized that there is "no absolute test for the presence of exigent circumstances." *United States v. Justice*, 835 F.2d 1310, 1312 (10th Cir. 1987) (quotation omitted). However, *United States v. Smith*, 797 F.2d 836, 840 (10th Cir. 1986), cited by Plaintiff, provides a general framework for analyzing a claim of exigent circumstances:

> The basic aspects of the "exigent circumstances" exception are that (1) the law enforcement officers must have reasonable grounds to believe that there is immediate need to protect their lives or others or their property or that of others, (2) the search must not be motivated by an intent to arrest and seize evidence, and (3) there must be some reasonable basis, approaching probable cause, to associate an emergency with the area or place to be searched.

Here, the record does not support Defendant's claim that exigent circumstances existed to authorize the warrantless entry into Plaintiff's home.  Defendant claims that following the drug transaction, he determined that Plaintiff should be immediately

arrested in a "safe manner."  Defendant's MSJ at 9; *Id.* Ex. 4 at p. 109, pp. 131-32 (portion of testimony of Brooke Buchanan, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1).   A warrantless intrusion into a home may be justified by probable cause for a search when the safety of law enforcement officers is threatened. *Chimel v. California*, 395 U.S. 752 (1969); *Warden v. Hayden*, 387 U.S. 294, 298-99 (1967).  Here, however, Defendant has introduced no evidence of a significant risk to the safety of a police officer, a third party or the public in general.  Defendant does not allege, and the record does not demonstrate, that the officers had reason to believe that Plaintiff was armed or had a history of violence.  Further, there is no evidence that the officers had any knowledge that there were other individuals or weapons in the home. Defendant's MSJ, Ex. 6 at p. 30 (portion of testimony of Mark Bruning, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 2). Thus,  the undersigned finds that Defendant has failed to establish a "plausible claim of a specially pressing or urgent law enforcement need."  *Illinois v. McArthur*, 531 U.S. 326, 331 (2001).  *See also Cortez v. McCauley*, 478 F.3d 1108, 1124 (10th Cir. 2007) (noting "officers may not simply recite urgent needs without factual support"; finding defendants had "offered nothing, beyond innuendo and speculation, to establish objectively reasonable grounds of an emergency, *i.e.*, an immediate need to protect their lives or others from serious injury or threatened injury").

As further justification for the warrantless entry into Plaintiff's home, Defendant relies on the "hot pursuit" rationale of cases such as *United States v. Santana*, 427 U.S.

38 (1976).  Defendant's MSJ at 10.  In *Santana*, police returned to a home where they had

just made an undercover drug buy with marked bills.  *Santana*, 427 U.S. at 40.  Their

intention was to arrest Santana from whom the drugs had been purchased.  *Id.*  The

policemen did not have a warrant for Santana's arrest and when they arrived at the scene,

they saw Santana standing in the doorway of her home with a brown paper bag in her

hand.  *Id.*  One step forward would have put her outside and one step back would have

put her in the vestibule of her home.  *Id.* at n.1.  When they were within 15 feet of the

residence, the officers got out of their van shouting, "Police," and displaying their

identification.  *Id.*  As the officers approached, Santana retreated into her home, and the

officers followed through the open door and arrested her in the vestibule.  *Id.*  In a search

incident to the arrest, both drugs and the marked bills were recovered.  *Id.* at 41. The

Court observed that, standing in her doorway, Santana was not in an area where she had

any expectation of privacy.  *Id.* at 42.  "She was not merely visible to the public but was

exposed to public view, speech, hearing, and touch as if she had been standing

completely outside her house."  *Id.*  The Court concluded that "a suspect may not defeat

an arrest which has been set in motion in a public place . . . by the expedient of escaping

to a private place."  *Id.* at 43.

The instant case is clearly distinguishable from *Santana*.  Unlike Santana, Plaintiff

has testified that he went inside his home and closed the door.  The trial testimony of the

officers who entered Plaintiff's home, including Defendant, is not inconsistent with

Plaintiff's testimony on this material point.  For example, portions of the trial transcript

submitted by both parties reflects that Plaintiff went back inside his home after the drug

transaction on his front porch.  Officer Higgins, who also participated in the entry and

search of Plaintiff's home, testified at trial, describing the events following Defendant's

undercover drug transaction with Plaintiff:

> We exited the van.  As we approached the door the door was shut.  Officer
> Bruning opened the screen door and tried to force his way into the front
> door of the residence.  He did manage to kick the door in and I followed
> him into the residence.

Defendant's MSJ, Ex. 4 at p. 175 (portion of testimony of Kenneth Higgins, *State v.*

*Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1); *see also*

Complaint, Ex. 1 at p. 175.

Officer Bruning, who also participated in the January 12, 2001, entry into

Plaintiff's residence, testified that as the three officers approached Plaintiff's residence:

> I could see [Plaintiff] look out the front door," and then I proceeded to the
> door.  That's when it was forced open. I tried the knob, it wouldn't turn,
> and the door was kicked open.

Defendant's MSJ, Ex.6 at p. 29 (portion of testimony of Mark Bruning, *State v. Williams*,

Case No. CF-2000-11, District Court of Logan County, Vol. 2).  Bruning further testified

that the entry "wasn't a knock and announce type like a search warrant would be.  It was

basically try the knob, yell 'police' and the door went open basically at the same time."

*Id.* at p. 30.  *See also* Complaint, Ex. 2 at pp. 29-30.

Defendant's trial testimony could also be construed as consistent with Plaintiff's

claim that the door to the house remained closed after he had reentered the house:

> And as we were walking back up towards the house on the front door
> there's a window that has a sliding pane that opens across the front
> of it.  That window opened, [Plaintiff] looked out, yelled "police" and

slammed the door back shut.  And at that time there was a lot of commotion going on inside the house.  I tried the knob, it was locked.  And we forced entry into the house.

Defendant's MSJ, Ex. 4 at p. 76 (portion of testimony of Brooke Buchanan, *State v. Williams*, Case No. CF-2000-11, District Court of Logan County, Vol. 1); *see also* Complaint, Ex. 1 at p. 76.

Defendant has also submitted a transcript of the telephonic application for search warrant which was conducted later in the evening of January 12, 2001, at approximately 9:00 p.m.  There, Defendant's description of the events following the drug transaction makes no mention of any facts reflecting "retreat" or "hot pursuit" circumstances:

When [Plaintiff] went back inside the residence task force officers Mark Bruning and Dale Higgins exited my vehicle and we entered the residence and secured three people and found at that time that [Plaintiff] had fled through a bathroom window.

Defendant's MSJ, Ex. 9 at 2.[20]  The probable cause affidavit later executed by Officer Bruning describing the events after the drug transaction is likewise lacking circumstances showing "hot pursuit":

We then exited the vehicle and started to walk towards the residence to retrieve our money and arrest [Plaintiff].  I observed a subject look out the window located in the door. We then approached the door.  The door was kicked open. . . . Agent Buchanan applied and was granted a search warrant for 923 E. Vilas.

---

[20]In the transcript of the telephonic warrant application, Defendant also described his observation of marijuana, crack cocaine, drug paraphernalia, the one-hundred dollar bill used in the drug transaction and another large amount of cash thrown down on the bathroom floor.  Defendant's MSJ, Ex. 9 at 3. The judge found that the information provided by Defendant constituted probable cause justifying the issuance of a search warrant for Plaintiff's residence.  *Id.* at 3-4.

Defendant's MSJ, Ex. 1 (District Nine Drug Task Force Probable Cause Affidavit by Mark Bruning).  Certainly a reasonable inference from this testimony would be that the officers were inside the residence before they learned that Plaintiff had fled out the bathroom window.

Finally, without discussing the particular facts surrounding the location of Plaintiff before and after the drug transaction, the OCCA, in its opinion reversing Plaintiff's convictions in Counts Three and Four, unequivocally found that "no exigent circumstances" existed to justify the warrantless entry into Plaintiff's home.[21]

Here, Plaintiff's sworn testimony and the bulk of the record in this case is at odds with Defendant's contention that the officers' warrantless entry into Plaintiff's home was conducted in hot pursuit.  Because the record confirms that the material facts are in dispute, summary judgment is not appropriate.  The Court cannot weigh the evidence to determine which version of events is more believable.  That function lies with the trier of fact.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge" in the resolution of a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

---

[21]Citing *Payton v. New* York, 445 U.S. 573 (1980), the OCCA stated the following regarding the circumstances surrounding the unlawful entry into Plaintiff's home:

> When officer Buchanan purchased crack cocaine from Williams's front porch, he could have immediately made an arrest, conducted a protective sweep of the house, and waited for a search warrant.  Buchanan instead chose to return to the unmarked van and join the other two officers in preparing to enter Williams's home and arrest him without a warrant.  The police officer's conduct was improper, as absent exigent circumstances, or consent, law enforcement may not enter a home to conduct a search or make a felony arrest without a warrant.  Here there were no exigent circumstances.  Indeed, the officer's asserted reason for entering the home was to arrest Williams – not to respond to any exigencies at hand.  Any evidence obtained after the unlawful entry must be suppressed.

Defendant's MSJ, Ex. 5 at 3 n.2.

242, 255 (1986). Rather than weigh the evidence, the Court must accept Plaintiff's evidence and resolve all justifiable inferences in his favor. *Id.* ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). Because there are genuine issues of material fact regarding whether Defendant was justified in entering Plaintiff's home without a search warrant because he was in hot pursuit of Plaintiff, summary judgment is not appropriate on this basis. *See Haugen v. Fields*, No. CV-05-3109-RHW, 2007 WL 1526366, at *7 (E.D. Wash. May 23, 2007) (unpublished decision) (denying summary judgment on qualified immunity defense on § 1983 claim involving officers' unannounced and warrantless entry into residence because there were "questions of fact regarding where the officers initially encountered [plaintiff] and the conduct that led the police to enter the residence").

Finally, Defendant contends that the warrantless intrusion into Plaintiff's home was justified because Plaintiff had just committed a felony involving drugs which are subject to destruction. A warrantless entry to prevent the loss or destruction of evidence is justified if Defendant demonstrates a reasonable belief that the loss or destruction of evidence is imminent. *See United States v. Aquino*, 836 F.2d 1268, 1270 (10th Cir. 1988).[22]

---

[22]In *Aquino*, the Tenth Circuit articulated four requirements for a permissible warrantless entry when the police fear the imminent destruction of evidence:

> An exception to the warrant requirement that allows police fearing the destruction of evidence to enter the home of [a] suspect should be (1) pursuant to clear evidence of probable cause, (2) available only for serious crimes and in circumstances where the destruction of evidence is likely, (3) limited in scope to the minimum intrusion necessary, and (4) supported by clearly defined indicators of exigency that are not subject to police manipulation or abuse.

*Aquino*, 836 F.2d at 1270.

*See also Illinois v. Andreas*, 463 U.S. 765, 780 (1983) (citing *Chambers v. Maroney*, 399 U.S. 42, 48-51 (1970)).   Here, Defendant was in possession of the illegal drugs he obtained from Plaintiff during the undercover buy on Plaintiff's front porch, which would have been sufficient to provide probable cause for the issuance of an arrest warrant and/or search warrant of Plaintiff's residence.   Defendant has provided no evidence indicating the officers had any reasonable belief that additional drugs located in the house might be destroyed or removed before a warrant could be obtained.   The fact that Plaintiff had committed a felony involving illegal drugs does not in and of itself amount to exigent circumstances justifying a warrantless residential entry.   Rather, the facts could support a finding that Defendant entered the home with an intent to arrest Plaintiff and search for evidence, without justification of a warrantless entry.   *See United States v. Smith*, 797 F.2d at 840 (exigent circumstances can justify a warrantless search only if the search is "not [ ] motivated by an intent to arrest and seize evidence"); *see also Georgia v. Randolph*, 547 U.S. 103, 116 n.5 (2006) ("A generalized interest in expedient law enforcement cannot, without more, justify a warrantless search."); *Coolidge v. New Hampshire*, 403 U.S. 443, 481 (1971) ("The warrant requirement . . . is not an inconvenience to be somehow 'weighed' against the claims of police efficiency."). Certainly if the officers had left to obtain a warrant without alerting Plaintiff to their real identities, there would have been no reason to believe any evidence would have been destroyed in the interim.   The undersigned finds that Defendant points to nothing in the record to justify a warrantless entry based on a fear of imminent destruction of evidence.

Therefore, viewing the facts discussed above in the light most favorable to Plaintiff, which the Court is obligated to do, the undersigned finds that a reasonable jury could conclude that Defendant's warrantless entry into Plaintiff's home on January 12, 2001, was without exigent circumstances and violated Plaintiff's Fourth Amendment rights. Thus, the undersigned finds that Defendant has failed to demonstrate that he is entitled to summary judgment based on Plaintiff's failure to allege the violation of a constitutional right.

2. <u>Presence of a "Clearly Established" Constitutional Right</u>

In order to defeat Defendant's assertion of qualified immunity, Plaintiff must establish not only that Defendant's actions violated his constitutional rights, he must also demonstrate that the right at issue was clearly established at the time of Defendant's actions. *Cortez*, 478 F.3d at 1114. *See also Saucier*, 533 U.S. 194, 202 (2001) ("The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation . . . ."). For a right to be clearly established, either Supreme Court or Tenth Circuit precedent must be on point or the clearly established weight of authority from other courts must agree with the plaintiff's contention. *Cortez*, 478 F.3d at 1114-15 (citing *Medina v. City of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992)).[23]

In the instant case, the relevant right is the right to be free in one's home from unreasonable searches. The Supreme Court has repeatedly emphasized the importance

---

[23]This does not require Plaintiff to cite a case holding that the specific conduct at issue is unlawful, but rather Plaintiff must show that the unlawfulness of the action was apparent. *Jones v. Hunt*, 410 F.3d 1221, 1229 (10th Cir. 2005).

of this right, stating "[o]ver and again this Court has emphasized that the mandate of the Fourth Amendment requires adherence to judicial processes . . . and that searches conducted outside of the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment–subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (citations omitted).  In a subsequent decision, *Wilson v. Layne*, 526 U.S. 603 (1999), the Supreme Court again emphasized the long history of this right.  "[T]he 'overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic' meant that absent a warrant or exigent circumstances, police could not enter a home to make an arrest." *Id.* at 610-11. The Tenth Circuit Court of Appeals has referred to this limitation on warrantless entries into a home as a "cardinal principle" of the Fourth Amendment.  *Franz v. Lytle*, 997 F.2d 784, 787 (10th Cir. 1993) (referring to this limitation).

Therefore, the law regarding the validity of a warrantless search of Plaintiff's home absent exigent circumstances was "clearly established" long before the January 12, 2001, search.  Thus, the undersigned finds that Plaintiff's constitutional rights were specifically and "clearly established" for purposes of qualified immunity.

### 3. Objective Reasonableness of Defendant's Conduct

"Qualified immunity shields an officer from suit when [he] makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances [he] confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (*per curiam*) (citing *Saucier v. Katz*, 533 U.S. at 206).  Defendant contends that he acted

30

reasonably because he "had no 'actual knowledge' of any constitutional violation" and he "was simply acting to apprehend a fleeing felon."  Defendant's MSJ at 12.  However, as previously discussed, it is undisputed that Defendant had neither an arrest warrant for Plaintiff nor a search warrant for Plaintiff's residence.  Additionally, Plaintiff had not consented to their entry.  Moreover, as discussed above, the record contradicts Defendant's claim of exigent circumstances, thus preventing summary judgment on this basis.  Finally, the state's highest criminal court has already found an undebatable violation of *Payton*.

Viewing these circumstances in the light most favorable to Plaintiff, the undersigned finds that Defendant has failed to show "that no material issues of fact remain as to whether his [] actions were objectively reasonable in light of the law and the information he [] possessed at the time."  *Hinton v. City of Elwood*, 997 F.2d 774, 779 (10th Cir. 1993) (internal quotation marks omitted).

In conclusion, drawing all reasonable inferences in a light most favorable to Plaintiff, a fact-finder could legitimately conclude that Defendant violated Plaintiff's clearly established Fourth Amendments rights, and a fact-finder could view Defendant's conduct as unreasonable under the circumstances.  Thus, the undersigned finds that Defendant is not entitled to immunity from trial on Plaintiff's § 1983 claim of an unlawful residential search, and it is recommended that Defendant's motion for summary judgment on grounds of qualified immunity be denied.

III.  Plaintiff's Motion for Summary Judgment

In seeking summary judgment on his Fourth Amendment claim, and in responding to Defendant's summary judgment motion, Plaintiff essentially contends that this Court is bound by the OCCA's decision that law enforcement officers violated his Fourth Amendment rights pursuant to *Payton v. New York*, 445 U.S. 573 (1980), when they entered his home on January 12, 2001, and obtained evidence used to convict him on Counts Three and Four in Case No. CF-2001-11.  Plaintiff's MSJ Brief [Doc. No. 129] at 2-4.[24]  Plaintiff's summary judgment materials and responses to Defendant's motion for summary judgment invoke general principles of collateral estoppel.  *Id.*; *see also* "Plaintiff's Response to Defendant Brooke Buchanan's Motion for Summary Judgment and Brief in Support" ("Plaintiff's Response to Defendant's MSJ") [Doc. No. 148] at 6-7 (citing 28 U.S.C. § 1738) and 8-10.  For the following reasons, Plaintiff's contention fails.

The full faith and credit statute, 28 U.S.C. § 1738, requires federal courts to give the same preclusive effect to a state court judgment that the judgment would receive in the courts of that state.  *See Jarrett v. Gramling*, 841 F. 2d 354, 356 (10th Cir. 1988) (citing *Migra v. Warren City School District Board of Education*, 465 U.S. 75 (1984)).  *See also Allen v. McCurry*, 449 U.S. 90, 94 (1980) (full faith and credit clause generally requires "federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so").[25]  "The preclusive effect of

---

[24]Plaintiff appears to confuse the standards utilized on habeas review of a state court's decision with principles of res judicata and collateral estoppel.

[25]The full faith and credit clause provides that "judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States and its Territories and (continued...)

a state-court decision in a § 1983 action filed in federal court is a matter of state law."

*Wilkinson v. Pitkin County Board of County Commrs.*, 142 F.3d 1319, 1322 (10th Cir. 1998).

Under Oklahoma law, preclusion rules prevent the relitigation of previously adjudicated

claims and issues when there is: (1) an identity of the subject matter, the parties or their

privies, and the cause of action; (2) the court which heard the original action was one of

competent jurisdiction; and (3) the judgment rendered was a judgment on the merits of

the case.  *See Carris v. John R. Thomas & Assocs., P.C.*, 896 P.2d 522, 527-528 (Okla.

1995).

Plaintiff contends that collateral estoppel applies in this case because Defendant

"was in privity with the State of Oklahoma in its role as prosecutor . . . ."  Plaintiff's

Response to Defendant's MSJ [Doc. No. 148] at 9.  Plaintiff points out that Defendant

"allege[d] the offenses against plaintiff, testified for the State of Oklahoma, was named

in the OCCA's opinion" and "his fellow agent (Mark Bruning) s[a]t at the prosecutor's

table the entire jury trial . . . ."  *Id.*  Plaintiff's estoppel theory is not supported by

authority, and the Tenth Circuit has made it clear that an Oklahoma state court's

conclusion during a criminal prosecution that a law enforcement officer's conduct was

unconstitutional is not afforded collateral estoppel effect in a subsequent civil case

against the officer because there is no privity between the prosecution in the criminal

case and the officer sued under § 1983.  *See McFarland v. Childers*, 212 F.3d 1178,

---

[25](...continued)
Possessions as they have by law or usage in the courts of such state  . . ."  28 U.S.C. § 1738.

1185-86 (10th Cir. 2000) (applying Oklahoma law); *Kinslow v. Ratzlaff*, 158 F.3d 1104, 1106-07 (10th Cir. 1998) (same).

Issue preclusion is not available to Plaintiff in this civil rights action because there is no privity between the prosecution in the criminal case by the State of Oklahoma and Defendant and Defendant was not a party in Plaintiff's criminal case.  In addition, Defendant's liability in his individual capacity was not at stake in the criminal proceeding.  Thus, the OCCA's decision reversing Plaintiff's convictions in Counts Three and Four based on its finding that law enforcement officers violated Plaintiff's Fourth Amendment rights, requiring the suppression of evidence supporting those counts, has no preclusive effect in the instant case.

Moreover, as discussed above in connection with Defendant's motion for summary judgment, the material facts concerning whether Defendant's warrantless entry into Plaintiff's home was justified by exigent circumstances are disputed at this stage of the proceeding.  Accordingly, the undersigned finds that Plaintiff is not entitled to summary judgment and his motion [Doc. No. 126] should be denied.

## RECOMMENDATION

For the reasons stated above, it is recommended by the undersigned Magistrate Judge that Defendant's motion for summary judgment [Doc. No. 145] be granted in part and denied in part, as follows:

• DENIED with respect to the statute of limitations defense;

• GRANTED with respect to Plaintiff's official capacity claim; and

• DENIED as to Plaintiff's individual capacity Fourth Amendment claim.

34

It is further recommended that Plaintiff's motion for summary judgment [Doc. No. 126] be DENIED.

The parties are advised of their right to file an objection to this Report and Recommendation with the Clerk of this Court by the 19th day of March, 2008, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1.   The parties are further advised that failure to make timely objection to this Report and Recommendation waives any right to appellate review of both factual and legal issues contained herein.   *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).   This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

ENTERED this 28th day of February, 2008.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE